UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21888-CIV-GOODMAN

[CONSENT CASE]

IGLESIA CRISTIANA EL BUEN
SAMARITANO, INC., et al.,

    Plaintiffs,

v.

GUARDIAN SERVICES, LLC, et al.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

This Cause is before the Court on Plaintiff Regions Bank's motion to dismiss Counts II, III, and IV of Defendants' amended counterclaim or, in the alternative, for a more definite statement on Count II (DE 38). Co-Plaintiff Iglesia Cristiana El Buen Samaritano, Inc. joins in Regions' motion (DE 39). After reviewing the motion and associated briefing, and the pertinent portions of the record, the court will grant the motion in part as to Count III, for the reasons outlined below.

### Background

Plaintiffs Iglesia and Regions brought this quiet title action against Defendants Guardian Services, LLC, The Liberty Group, Inc., and Bradley W. Skolnik, as receiver for Guardian and Liberty. Subsequently, Michael J. Rusnak was substituted for Skolnik as Liberty and Guardian's receiver. The Defendants counterclaimed for breach of the trust indentures (Count I), foreclosure (Count II), unjust enrichment (Count III), equitable

lien (Count IV), and indemnification (Count V).  The Court has diversity jurisdiction under 28 U.S.C. § 1332.

Briefly, the background facts as alleged in the amended counterclaim (DE 37) are as follows:  Between 1996 and 2003, Iglesia granted three mortgages to either Liberty or Guardian totaling approximately $4.5 million.  In December 2004, an employee of Guardian, in response to a request from someone at Iglesia, sent an "estoppel letter" to Iglesia, indicating that the payoff value of all the mortgage loan balances was $3,296,228.00.  In fact, that amount understated the balance by more than $1 million and, according to Defendants, arose out of an extensive fraud.[1]  Nevertheless, relying on the estoppel letter, Iglesia wired money in the amount stated in the letter to Liberty, and the parties now dispute whether the mortgages have been satisfied or should be satisfied.

## Standard of Review

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[1] The fraud was allegedly orchestrated by a family known as the "Reeves," a father and three sons who are subjects of a civil enforcement action by the SEC pending in the Southern District of Indiana

Under the plausibility standard announced by the Supreme Court in *Twombly*, the facts pled in the complaint must "raise a reasonable expectation that discovery will reveal evidence" corroborating the plaintiff's claim. 550 U.S. at 556. When the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. Thus, to survive a motion to dismiss, the complaint must set forth sufficient factual matter to state a claim that is facially plausible; a claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Where the allegations in the complaint do not allow the court to "infer more than the mere possibility of misconduct," the plaintiff has not shown that he is entitled to relief. *Id.*

"As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss." *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996). Additionally, when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

**Count II**

Regions first moves to dismiss Count II for failure to state a cause of action for foreclosure. Regions relies on Florida Rule of Civil Procedure Form 1.944, which can be used for a foreclosure action.[2] In particular, Regions points to paragraph 5, which states: "Defendant has defaulted under the note and mortgage by failing to pay the payment due .....(date)....., and all subsequent payments." Regions argues that the counterclaim should be dismissed because it does not allege the date of default.

In deciding a motion to dismiss, a federal court sitting in diversity must look to the liberal pleading standards of the *Federal* Rules of Civil Procedure:

> Although Florida substantive law applies to this diversity action, federal procedural law governs. While Florida requires, perhaps wisely, specific allegations of publication in the complaint, . . . a federal court need not adhere to a state's strict pleading requirements but should instead follow Fed.R.Civ.P. 8(a). In contrast to Florida's strict pleading requirements, Fed.R.Civ.P. 8(a)(2), simply requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement means the complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986) (citations omitted). Under Rule 8(a)'s liberal pleading requirements, a complaint need not even allege every element of a cause of action so long as it contains sufficient "inferential allegations from which [the court] can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001).

---

[2] The forms accompanying the Florida Rules of Civil Procedure are intended to aid attorneys by setting forth sufficient pleading standards. *See* Fla. R. Civ. P. 1.900(a).

Although the form *mentions* the date, Regions does not cite any law to support the argument that the date is an element which *must* be alleged even under Florida's more-rigid pleading requirements. The mere fact that the date is included in an illustrative form does not necessarily mean that the failure to include the date is fatal.

Nevertheless, as noted, the state court form does not in any event control the pleading standards in federal court. The foreclosure claim as pled gives the plaintiffs fair notice of what the claim is about and states a plausible prayer for relief. The defendants' amended counterclaim is detailed and specific; the defendants were not also required to plead the date of default under Rule 8(a)'s liberal pleading standards given their otherwise detailed allegations.

In the alternative, Regions moves for a more definite statement alleging the date of default. A more definite statement is appropriate when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Rule 12(e)'s role is to clarify unintelligible pleadings and is not a substitute for finding facts that are more appropriately investigated through discovery. *See Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007). Regions does not need to know the date of default in order to reasonably prepare a response to the foreclosure claim. The defendants have alleged in detail that Iglesia is in default on its mortgages. Regions will be able to learn more about the facts surrounding the alleged default through various discovery methods. A more definite statement is not required under Rule 12(e).

Thus, the motion to dismiss, or in the alternative for a more definite statement, will be denied as to Count II.

## **Count III**

Next, Regions moves to dismiss the unjust enrichment claim in Count III. Regions argues that when a defendant gives adequate consideration for a benefit conferred, an unjust enrichment claim must fail. Iglesia responds that the Court must accept its allegation (that the consideration was inadequate) as true at the 12(b)(6) stage. After carefully reviewing the amended counterclaim, however, it appears that the Defendants lack standing to assert this claim because the claim is not ripe. Count III will therefore be dismissed for lack of standing, without addressing the merit of the parties' arguments on the sufficiency of consideration. .

Federal courts have an obligation to consider their subject matter jurisdiction *sua sponte*, and should presume that jurisdiction is wanting until the parties demonstrate that subject matter jurisdiction exists. *Arce v. Garcia*, 400 F.3d 1340, 1344 (11th Cir. 2005); *Office of the AG v. Hess*, No. 08-61840, 2008 U.S. Dist. LEXIS 95942, at *4 (S.D. Fla. Nov. 18, 2008) (citing *United States v. Rojas*, 429 F.3d 1317, 1320 (11th Cir. 2005)).

All federal courts are limited by Article III of the Constitution to resolving "cases" and "controversies." In order to show standing under the case-and-controversy requirement, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733 (2008). Standing does not exist unless the plaintiff "has a legally cognizable interest that has been or is imminently at risk of being invaded." *Mulhall v. Unite Here Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010).

A close review of Count III reveals that it is predicated on *events that have not yet occurred:*

> 65.  By their Complaint, Regions and Iglesia seek to require the Receiver to release the Liberty and Guardian Mortgages.
>
> 66.  The $3,296,288.00 wired to Liberty was insufficient to pay off the balances of the Liberty and Guardian Mortgages
>
> 67.  *If* the Receiver is required to release the Liberty and Guardian Mortgages, the Receiver *will have* conferred a direct benefit on Iglesia in the form of releasing Iglesia mortgage obligations which it has never satisfied.
>
> 68.  *If* the Receiver is required to release the Liberty and Guardian Mortgages, the Receiver *will have* conferred a direct benefit on Regions in the form of elevating Regions' security interest to a first priority security interest over a prior security interest which was never fully paid.
>
> * * *
>
> 70.  *If* for any reason the Mortgages are not determined to be valid first, second and third priority mortgage liens, respectively, on the Iglesia Property, and a valid first priority lien on Parcel III, continuing to secure the entire unpaid balance of principal and interest under the Trust Indentures and the Bonds issued thereunder, then Iglesia and Regions *would be* unjustly enriched to the extent that said balance as of February 15, 2005 exceeded the Partial Payment made on that date.

(Doc. 37, at 33-34) (emphasis added).

The Court understands this claim to be based on the notion that *if* the plaintiffs succeed in this lawsuit and the Court determines that the mortgages were satisfied, then -- and only then -- the Receiver will have conferred a direct benefit on the plaintiffs. At this point, however, the defendants' injury is purely hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (plaintiff's injury cannot be conjectural and redressability cannot be based on speculation). The pleadings show that the cloud on title

still hangs over the mortgages and property at issue. Since the outcome of this litigation is uncertain, the defendants have not alleged that they have suffered any injury at the present time or that an injury is "imminent," justifying an unjust enrichment claim. Instead, they base their claim on the *speculative* outcome of a legal proceeding, impermissible under *Lujan* and its progeny.

To borrow lyrics, albeit out of context, from a Keith Urban song, "And maybe it's a little too early / To know if this is gonna work."[3]

The defendants argue that they are pleading in the alternative, but pleading in the alternative typically involves different legal theories arising out of the same set of facts. For example, a plaintiff might allege "both intentional infliction of emotional distress and negligent infliction of emotional distress *based on the same conduct*." BLACK'S LAW DICTIONARY 1271 (9th ed. 2009) (defining "alternative pleading"). Here, however, the defendants' unjust enrichment claim is based on conduct that has yet to occur, i.e., releasing the plaintiffs from their mortgages -- and may never occur at all. In contrast, the defendants' foreclosure claim is based on the plaintiffs' alleged default, a concrete and different event that has already occurred.

---

[3] Urban, Keith. "You Look Good In My Shirt." Lyrics. Golden Road. Capitol, 2002, *available at* http://www.lyrics007.com/Keith%20Urban%20Lyrics/You%20Look%20Good%20In%20My%20Shirt%20Lyrics.html. Born in New Zealand, Urban is a country singer/songwriter who was voted Top New Male Vocalist at the 2001 Country Music Association Awards. He was named CMA's Entertainer of the Year in 2005. In 2006, Urban won his first Grammy Award and married Australian-born actress Nicole Kidman later that year. Keith Urban Biography - Facts, Birthday, Life Story, http://www.biography.com/people/keith-urban-193217 (last visited Nov. 21, 2011). Based on preliminary research, it does not appear that Mr. Urban has released any songs expressly discussing the concept of Article III standing.

Count III of the amended counterclaim will therefore be dismissed because Defendants lack standing to pursue this claim.

### **Count IV**

Lastly, Regions moves to dismiss Count IV for an equitable lien. Regions argues that the Defendants are not entitled to obtain an equitable remedy because, under the *in pari delicto* doctrine, they come to court with unclean hands.[4] Specifically, the Defendants' own pleadings allege that Defendant Guardian intentionally understated the payoff amount by over $1 million. The Defendants respond that that while a receiver stands in the same shoes of the entities-in-receivership, here Liberty and Guardian, the receiver may under certain circumstances escape defenses, such as the *in pari delicto* defense, that could otherwise be asserted against those entities.

Because this is a diversity case, the Court looks to Florida law to resolve this dispute. The leading case is *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543 (Fla. 2d DCA 2003). There, the court held that the *in pari delicto* doctrine barred a receiver from bringing fraud claims against third parties who allegedly participated in the corporation-in-receivership's fraud. Because the receiver inherited only those claims which the corporation itself could have brought, and because the corporation acted solely at the behest of the corrupt insiders who themselves participated in the fraud, the court reasoned the receiver could not assert those claims. *Id.* at 551.

Regions is therefore correct to distinguish the facts in *Freeman* from those here. Nevertheless, a closer reading of *Freeman* is not helpful to Regions' position. The

---

[4] *In pari delicto* literally means "in equal fault"; it stands for the principle that a plaintiff may not recover from wrongdoing that he has participated in. BLACK'S LAW DICTIONARY 862 (9th ed. 2009).

9

*Freeman* court in *dictum* expressly distinguished its facts from a scenario where the receiver moves "against the . . . *recipients* of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." *Id.* (emphasis added). In these circumstances, *Freeman* strongly suggested that the receiver would *not* inherit the sins of his predecessors and could pursue claims that would otherwise be barred by *in pari delicto* if asserted by the corporation itself. *See id.* at 550 ("We are inclined to believe that the receiver may also pursue certain claims that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership.").

In *Goldberg v. Chong*, No. 07-49980, 2007 U.S. Dist. LEXIS 49980 (S.D. Fla. July 11, 2007), a sister court in this district, relying in part on *Freeman*, held that the *in pari delicto* doctrine did not apply when the receiver took over from the wrongdoing entity and sought to recoup improperly transferred assets. The receiver in *Goldberg* sued a corporation's former employee to recover $5 million wrongfully paid out by the corporation. The court reasoned that "[t]he mere fact that [the corporation] was inappropriately transferring funds to [the employee] should not prevent the Receiver, who acts to do nothing more than salvage the assets of the Receivership entities, from recovering those funds." 2007 U.S. Dist. LEXIS 49980, at *29. Although the Defendants here did not transfer any money to the Plaintiffs, the reasoning in *Goldberg* applies with equal force because the understatement of the Plaintiffs' obligations by more than $1 million dollars was an allegedly improper transaction that depleted the corporation's assets.

10

*Freeman* draws a reasoned distinction that permits the receiver to proceed against the *beneficiaries* of a fraudulent transaction, fully absolved from the corporation's sins, but constrains the receiver from bringing freestanding fraud claims on behalf of *participants* in the fraud unless the corporation-in-receivership had at least one honest stakeholder who could have been defrauded:

> [W]e believe it is helpful to differentiate between two types of claims that may arise in this context. First, there are actions that the corporation, which has been "cleansed" through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership. . . . Distinct from these claims, however, are common law tort claims against third parties to recover damages in the name or shoes of the corporation for the fraud perpetrated by the corporation's insiders. . . . When the entities in receivership do not include a corporation that has at least one honest member of the board of directors or an innocent stockholder, we do not perceive a method to separate the fraud and intentional torts of the insiders from those of the corporation itself.

*Freeman*, 865 So. 2d at 551. *See also Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995) ("the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated"). Here, the receiver permissibly seeks to recover corporate assets that he alleges were wrongfully transferred to the Plaintiffs. He may do free of any unclean hands or *in pari delicto* defense.

## Conclusion

Regions' motion to dismiss is granted in part on Count III on the alternative basis of lack of standing. Count III of Defendants' amended counterclaim (Doc. 37) is

11

dismissed.  The motion to dismiss is denied in all other respects.  The remaining counts in the amended counterclaim shall proceed as a matter of course.

      DONE AND ORDERED in Chambers, Miami, Florida, November 21, 2011.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to:</u>
All Counsel of Record